UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL VERNELL YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2131** |
| **BEVERLY KELLY, ET AL.** | **SECTION: "I"(1)** |

**O R D E R**

Plaintiff, Michael Vernell Young, a state prisoner incarcerated at the Rayburn Correctional Center ("RCC"), is a frequent filer of federal lawsuits. In the instant one, he filed a lengthy complaint making numerous allegations against various prison officials. However, in short, he summarized:

> The defendants were deliberately indifferent to my health and safety where they have actual knowledge of a excessive risk of harm and disregard the risk they know of just because of the color of my skin and as retaliation for me filing ARP's, lawsuits and posting materials on the internet exposing the unjust things going on in Rayburn. The defendants conspired in order to violate my rights to be free from sexual assault by the hands of another prisoner by covering up the sexual assault. They know my safety is at risk everyday but disregard the risk.[1]

Because plaintiff met the requisite financial criteria, he was granted permission to proceed as a pauper in this action.[2] The defendants have now filed a "Motion to Revoke Pauper Status,"[3] which plaintiff has opposed.[4]

The United States Supreme Court has explained:

> Congress first enacted an *in forma pauperis* statute in 1892. Congress recognized that no citizen should be denied an opportunity to commence, prosecute,

---

[1] Rec. Doc. 1, p. 6.
[2] Rec. Doc. 3.
[3] Rec. Doc. 10.
[4] Rec. Doc. 15.

> or defend an action, civil or criminal, in any court of the United States, solely because his poverty makes it impossible for him to pay or secure the costs. The current statute permits an individual to litigate a federal action *in forma pauperis* if the individual files an affidavit stating, among other things, that he or she is unable to prepay fees "or give security therefor." 28 U.S.C. §1915(a)(1).
>
> Even in 1892, Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. And as the years passed, Congress came to see that prisoner suits in particular represented a disproportionate share of federal filings. It responded by enacting a variety of reforms designed to filter out the bad claims filed by prisoners and facilitate consideration of the good.

Coleman v. Tollefson, 135 S. Ct. 1759, 1761-62 (2015) (citations, quotation marks, brackets, and ellipsis omitted).

One of those reforms is at issue here. Specifically, "[t]o help staunch a flood of nonmeritorious prisoner litigation, the Prison Litigation Reform Act of 1995 (PLRA) established what has become known as the three-strikes rule." Lomax v. Ortiz-Marquez, 140 S.Ct. 1721, 1723 (2020) (quotation marks omitted). That rule, which was codified at 28 U.S.C. § 1915(g), provides:

> In no event shall a prisoner *bring* a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more *prior* occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added).

The defendants argue that plaintiff's pauper status should be revoked in the instant case pursuant to that three-strikes rule. The defendants do not contest that plaintiff was eligible to proceed as a pauper at the time this lawsuit was *brought*; rather, they argue merely that he is no longer eligible to *continue to prosecute* this action as a pauper because, since the time this lawsuit was filed, he accrued a third "strike" for the purposes of § 1915(g) in one of his other cases. In

support of that argument that such post-filing "back strikes" are disqualifying, they cite an opinion recently issued by another division of this Court which revoked this same plaintiff's pauper status in that lawsuit. In that opinion, the United States Magistrate Judge held:

> A review of the Court's records reveals that the Plaintiff, while he was housed at RCC, previously filed three 42 U.S.C. §1983 actions in this forum that were dismissed as frivolous and/or for failing to state a claim upon which relief can be granted, those being Young v. LeBlanc, et al., No. 19-CV-13516 "T"(2), Young v. LeBlanc, et al., No. 17-CV-6329 "B"(4), and Young v. McCain, et al., No. 16-CV-3404 "I"(5). Each of these dismissals counts as a "strike" under §1915(g). Spears v. Scales, 689 Fed.Appx. 293, 294 (5th Cir. 2017)(citing Coleman v. Tollefson, ___ U.S. ___, 135 S.Ct. 1759, 1763-64 (2015) and Arvie v. Lastrapes, 106 F.3d 1230, 1231-32 (5th Cir. 1997)). See also Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir. 1996).
>
> Much like an IFP plaintiff's economic standing which is subject to re-evaluation for continued eligibility for pauper status if there has been a betterment of his financial condition during the pendency of his suit, Castillo v. Blanco, 330 Fed.Appx. 463 (5th Cir. 2009), various district courts within the Fifth Circuit that have considered the issue have similarly concluded that "… re-evaluation of a plaintiff's pauper status is appropriate where information comes to light showing he is or has been an abusive litigant who is *no longer eligible* to proceed in forma pauperis." Ward v. Taylor, No. 10-CV-0221, 2010 WL 5579617 at *1 (N.D. Tex. Dec. 13, 2010), adopted, 2011 WL 117877 (N.D. Tex. Jan. 12, 1011); Johnson v. Suter, No. 08-CV-0070, 2009 WL 3740630 at *1-2 (N.D. Tex. Nov. 6, 2009); Nichols v. Rich, No. 01-CV-0369, 2004 WL 743938 at *1 (N.D. Tex. Apr. 7, 2004), adopted, 2004 WL 1119689 (N.D. Tex. May 18, 2004). See also McCain v. Hefner, No. 13-CV-0502, 2013 WL 4711661 (E.D. Tex. Aug. 30, 2013); Barton v. State of Texas, No. 13-CV-0118, 2013 WL 4418848 (E.D. Tex. Aug. 13, 2013); McGrew v. Barr, No. 10-CV-0272, 2011 WL 1107195 (M.D. La. March 22, 2011). See also, Harris v. Gusman, et al., No. 13-CV-0522 "G"(5). The rationale behind those decisions is that entitlement to proceed IFP is a privilege, not a right, and that re-evaluation of a plaintiff's pauper status helps foster the principal goal of the Prison Litigation Reform Act ("PLRA"), as codified in §1915, "… to deter frivolous prisoner litigation in courts by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." Ward, 2010 WL 5579617 at *1 (quoting Jackson v. Stinnett, 102 F.3d 132, 137 (5th Cir. 1996)(internal quotations omitted)).
>
> As noted above, Plaintiff has accumulated three countable strikes under §1915(g). That being the case, re-evaluation of his *continued eligibility* to proceed IFP at government expense is appropriate and the fact that one of the strikes, in No. 17-CV-6329, came to fruition *after this lawsuit was filed* is of no moment.

> McGrew, 2011 WL 1107195; Ward, 2010 WL 5579617; Johnson, 2009 WL 3740630.

Young v. Cleveland, Civ. Action No. 20-2077 "G"(5) (E.D. La. Aug. 31, 2020) (emphasis added). After further finding that plaintiff was not under imminent danger of serious physical injury at the time that lawsuit was filed, the Magistrate Judge revoked plaintiff's pauper status. Id. Plaintiff objected, and his objections are currently pending before this Court's Chief Judge.

While the undersigned has the utmost respect for the Magistrate Judge in the foregoing case, his ruling is not binding on this separate division in this unrelated case. Cf. Fishman & Tobin, Inc., v. Tropical Shipping & Construction Co., 240 F.3d 956, 965 (11th Cir. 2001) ("Unlike circuit court panels where one panel will not overrule another, district courts are not held to the same standard. While the decisions of their fellow judges are persuasive, they are not binding authority. As a result, the district court cannot be said to be bound by a decision of one of its brother or sister judges." (citations omitted)); Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1371 (3d Cir. 1991) ("Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another. Where a second judge believes that a different result may obtain, independent analysis is appropriate." (citation, footnote, and quotation marks omitted)).

Based on an independent analysis of this issue, the undersigned United States Magistrate Judge has reached a contrary conclusion. Of course, there can be no doubt that overly litigious prisoners who waste the federal courts' limited resources by clogging dockets with meritless litigation are a pervasive problem which Congress attempted to ameliorate in § 1915(g). See

4

Lomax, 140 S. Ct. at 1726 ("The point of the PLRA, as its terms show, was to cabin not only abusive but also simply meritless prisoner suits. … Before the PLRA, the statute governing IFP claims targeted frivolous and malicious actions, but no others. In the PLRA, Congress chose to go further – precisely by aiming as well at actions that failed to state a claim. The theory was that a flood of nonmeritorious claims, even if not in any way abusive, was effectively precluding consideration of suits more likely to succeed." (citation, quotation marks, and brackets omitted)). However, while § 1915(g) has largely curtailed the ability of individual prisoners to squander court resources by continually filing baseless actions, it has not entirely eliminated the problem.

Nevertheless, Congress obviously could have adopted a more expansive and draconian remedy. For example, it could have – and arguably should have – worded § 1915(g) to expressly provide that a "third strike" affects both future and *existing* litigation. For reasons unknown, it did not do so. And, for the following reasons, the undersigned declines to find that the seemingly clear language employed by Congress in the provision should be judicially expanded, no matter how warranted such an expansion might seem.

Although there are surprisingly few cases which discuss the precise scenario at issue here, cases discussing similar scenarios requiring parsing of § 1915(g)'s language do exist. A number of those cases have concluded that § 1915(g) imposes a clear "temporal" restriction on what strikes may be counted against a prisoner in a given case. For example, the United States Third Circuit Court of Appeals has opined:

> In our view, the term "prior" [in § 1915(g)] sets a temporal parameter, referring only to strikes accrued earlier in time than the notice of appeal. All later-accrued strikes – even if imposed after the filing of the notice of appeal but before the prisoner's IFP motion is decided – are not "prior" strikes, and therefore do not "count" for purposes of the three strikes rule. Millhouse [v. Heath], 866 F.3d [152,] 154 [(3d Cir. 2017)] ("Strikes that accrue before the filing of the notice of appeal

> count as strikes – while strikes that accrue after the notice of appeal is filed do not."). If the statute did not include the term "prior," then any strikes, including those issued after a prisoner files an appeal but before IFP status is awarded or denied, could contribute to the strike count. Thus, in our view, "prior" has meaning.

Parker v. Montgomery County Facility/Business Office Manager, 870 F.3d 144, 153 (3d Cir. 2017) (footnote omitted); accord Millhouse v. Heath, 866 F.3d 152, 161 (3d Cir. 2017) ("[W]e read the statutory scheme – given the statutory language, existing case law, the purposes of the legislation, and basic considerations of fairness – as requiring us to look to the date the notice of appeal is filed in assessing whether a dismissal counts as a strike. Strikes accrued after this date simply do not count under § 1915(g)."), abrogated on different grounds by Lomax v. Ortiz-Marquez, 140 S. Ct. 1721 (2020). Although the United States Fifth Circuit Court of Appeals has not expressly spoken on this issue, at least one Circuit Judge reached a similar conclusion in a concurrence in a recent case. See Alexander v. Texas Department of Criminal Justice, 951 F.3d 236, 246 (5th Cir. 2020) (Ho, J., concurring) ("The statutory text states that courts must count findings of frivolousness 'prior' to 'a prisoner bring[ing] a civil action or appeal,' 28 U.S.C. § 1915(g) …. Imagine the following situation: A prisoner has accrued two strikes. He files a new lawsuit and seeks IFP status. He subsequently receives a third strike in a previously filed action or appeal. Would that third strike result in a denial of IFP status in the new pending lawsuit? No: The third strike would be an 'occasion' under the statute – but not one 'prior' to the 'prisoner bring[ing] a civil action or appeal.' 28 U.S.C. § 1915(g)."). The undersigned similarly finds that reading more closely adheres to the language employed by Congress in § 1915(g).

Accordingly, **IT IS ORDERED** that defendants' "Motion to Revoke Pauper Status," Rec. Doc. 10, is **DENIED**.

New Orleans, Louisiana, this 21st day of December, 2020.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**